UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | No. 6:13-CR-20-GFVT-HAI-3 |
| v. | ) ) | RECOMMENDED DISPOSITION |
| BOBBY DARRELL CANADA, II, | ) ) ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Van Tatenhove (D.E. 1158 at 2), the Court considers reported violations of supervised release conditions by Defendant Bobby Canada, II. Judge Van Tatenhove entered a judgment against Defendant on July 8, 2014, following a guilty plea to conspiracy to manufacture fifty grams or more of a methamphetamine mixture. D.E. 662. Defendant was sentenced to forty-one months of imprisonment followed by forty-eight months of supervised release. *Id.* On September 17, 2015, Judge Van Tatenhove, pursuant to 18 U.S.C. § 3582(c)(2), reduced Defendant's sentence to thirty-three months. D.E. 990. Defendant began his first supervised release term on November 6, 2015. He then committed multiple violations.

On February 11, 2016, a Report on Offender Under Supervision was issued by the United States Probation Office (USPO). D.E. 1033. The report indicated that Defendant provided a urine specimen that tested positive for oxycodone, amphetamine, and buprenorphine following an admission of use to the USPO. *Id*. Judge Van Tatenhove approved the USPO's request for no action, and Defendant was referred to outpatient substance abuse counseling. *Id*. On April 20, 2016, the USPO submitted a Request for Modifying the Conditions or Term of Supervision with Consent of the Offender after Defendant provided urine specimens that tested positive for methamphetamine and twice for oxycodone. D.E. 1044. The USPO requested that Defendant be

required to pay for and complete an Intensive Outpatient Program (IOP) and to report to the USPO for weekly drug testing for a period of three months. *Id*. Judge Van Tatenhove approved the Request on April 20, 2016. *Id*.

On May 26, 2016, the USPO submitted a Supervised Release Violation Report after Defendant's urine tested positive for oxymorphone, a metabolite of oxycodone. D.E. 1057. The Supervised Release Violation Report charged Defendant with two violations stemming from this conduct. *Id*. at 2. First, it charged him with violating the condition of his release that required him to "not purchase, possess, use, distribute, or administer any controlled substance . . . except as prescribed by a physician." *Id*. Second, it charged him with violating the condition that he "not commit another federal, state, or local crime." *Id*. Consistent with the undersigned's recommendation (*id*.), Judge Van Tatenhove revoked Defendant's supervised release and sentenced him to seven months of imprisonment followed by forty-eight months of supervised release. D.E. 1069. Defendant was released from custody on January 10, 2017, to begin his second term of supervised release.

On April 3, 2017, the USPO submitted a Report on Offender Under Supervision and requested that the Court take no action after Defendant admitted to using buprenorphine and his urine subsequently tested positive for such use via an instant testing device. D.E. 1103. Judge Van Tatenhove approved the USPO's request and Defendant began a ninety-day inpatient drug treatment program. *Id*. He completed the inpatient treatment program on July 20, 2017, and was referred to an outpatient treatment program.

**I.**

On March 23, 2018, the USPO submitted another Supervised Release Violation Report (the "Report"). The Report charges Defendant with two violations of his supervised release.

2

First, in Violation #1, the Report alleges that Defendant violated Standard Condition #7, which requires him to "not purchase, possess, use, distribute, or administer any controlled substance . . . except as prescribed by a physician." Specifically, the Report alleges that, on March 19, 2018, Defendant admitted to using buprenorphine and provided a urine specimen that tested positive for buprenorphine and methamphetamine via an instant testing device. Defendant signed an admission form acknowledging buprenorphine use, but he denied any methamphetamine use. This is a Grade C Violation. Second, in Violation #2, the Report charges Defendant with a violation of the condition of his supervised release that requires that he "not commit another federal, state, or local crime." This Violation is based on Defendant's possession of buprenorphine, which, given Defendant's prior drug conviction, is a violation of 21 U.S.C. § 844(a) and a Class E felony. This is a Grade B violation.

On March 29, 2018, the USPO submitted a Supervised Release Violation Report Addendum ("the Addendum"), which charges Defendant with two additional violations. As Violation #3, the Addendum charges Defendant with violating Standard Condition #7, which requires him to "not purchase, possess, use, distribute, or administer any controlled substance . . . except as prescribed by a physician." Specifically, the Addendum alleges that the urine specimen submitted on March 19, 2018, ultimately tested positive for methamphetamine via laboratory testing. As Violation #4, the Addendum alleges that Defendant violated the condition of his supervised release that requires him to "not commit another federal, state, or local crime." This Violation is based on Defendant's possession of methamphetamine, which, given Defendant's prior drug conviction, is a violation of 21 U.S.C. § 844(a) and a Class E felony. This is a Grade B violation.

The Court conducted an initial appearance on April 12, 2018, and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. D.E. 1164. The United States moved for interim detention and Defendant did not argue for release. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), Defendant was remanded to the custody of the United States Marshal. *Id.*

At the final hearing on April 26, 2018, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 1168. Defendant competently entered a knowing, voluntary, and intelligent stipulation to all four violations. *Id.* For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for all violations as described in the Report. In the Supervised Release context, the Sixth Circuit treats controlled substance use as equivalent to possession. *See United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000). The United States thus established both Violations #2 and #4 under the standard of § 3583(e).

## II.

The Court has evaluated the entire record, the Report, the Addendum, all accompanying documents, and the sentencing materials from the underlying Judgment. Additionally, the Court has considered all of the § 3553 factors imported into the § 3583(e) analysis. Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pled guilty to conspiracy to manufacture fifty grams or more of a methamphetamine mixture in violation of 21 U.S.C. § 846, which is a Class B felony. *See* 21 U.S.C. § 841(b)(1)(B)(viii); 18 U.S.C. § 3559(a)(2). For a Class B felony, the maximum revocation sentence provided under § 3583 is three years of imprisonment. 18 U.S.C. § 3583(e)(3). The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at

4

the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438–39 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, U.S.S.G. § 7B1.4, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted). Under section 7B1.1, Defendant's admitted conduct would qualify as Grade C violations with respect to Violations #1 and #3 and Grade B violations with respect to Violations #2 and #4. Given Defendant's criminal history category of I (the category at the time of the conviction in this District) and a Grade B violation, Defendant's range, under the Revocation Table of Chapter 7, is four to ten months.[1]

The United States argued for revocation and a term of imprisonment of twenty-four months – a sentence fourteen months above the Guidelines Range – followed by no term of supervised release. In support of this recommendation, the United States emphasized that Defendant has violated his supervised release many times without revocation. First, Defendant admitted to using oxycodone, amphetamine, and buprenorphine and his urine specimen ultimately confirmed this use on February 4, 2016. D.E. 1033. Judge Van Tatenhove approved the USPO's request that no action be taken. *Id*. Second, Defendant submitted urine specimens on March 14 and April 7, 2016, that ultimately tested positive for methamphetamine, oxycodone, and opiate use. D.E. 1044. Judge Van Tatenhove approved the USPO's request that Defendant's conditions be modified. *Id*. Third, Judge Van Tatenhove approved the USPO's request that no action be taken after Defendant admitted to using, and his urine sample tested

---

[1] *See* U.S.S.G § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

5

positive for, buprenorphine on April 3, 2017. D.E. 1103. In addition, Defendant received a middle-of-the-guidelines sentence (seven months of a four to ten month range) for his first revocation when his urine tested positive for oxycodone. D.E. 1069. The United States argued that Defendant's Guidelines Range does not adequately consider his long history of violations and the Court's inability to deter him from criminal conduct.

Regarding the need to protect the public, the government argued that an above-Guidelines term of incarceration is the best method to protect the public in lieu of an additional term of supervised release. The government stated that the recommended sentence accounts for Defendant's recent dishonesty regarding his methamphetamine use after a long history of honesty with the USPO. However, the government also noted Defendant's stipulation to the violations, and explained that this acceptance of responsibility convinced it to not recommend the three-year statutory maximum.

Defense counsel argued for revocation and a term of imprisonment at the high end of Defendant's Guidelines Range followed by four years of supervised release, or, alternatively, a sentence of incarceration above the Guidelines Range, specifically twelve to sixteen months, followed by no term of supervised release. Regarding Defendant's history and characteristics, counsel emphasized that he grew up in a culture surrounded by drugs and his father was imprisoned for murder when Defendant was twelve years old. Additionally, counsel noted his low criminal history and argued that his drug use only poses a risk of danger to Defendant and does not threaten the rest of the community. Counsel also argued that twenty-four months of incarceration was excessive in light of the nature of Defendant's violations. Counsel emphasized Defendant's commitment to maintaining his sobriety after the recent birth of his first child. Although Defendant completed inpatient and outpatient rehabilitation, counsel indicated that the

reduction of Defendant's sentence pursuant to § 3582(c)(2) precluded participation in the Residential Drug Abuse Program ("RDAP") and requested that Defendant be allowed to participate in a halfway house program away from the community in which he was raised.

Defendant addressed the Court and apologized to his probation officer, the community, and his family. He acknowledged the support of the USPO and accepted responsibility for using buprenorphine and methamphetamine.

### III.

At the outset, the Court notes that Congress does ***mandate*** revocation in a case of this nature. By statute, the Court must revoke Defendant and impose imprisonment because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). The lone exception to mandatory revocation would be if an appropriate substance abuse treatment program were available pursuant to 18 U.S.C. § 3583(d). Having previously provided Defendant with long-term inpatient treatment at public expense, no such appropriate program is available. To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range.

The nature and circumstances of Defendant's underlying conviction are serious. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). A large scale methamphetamine manufacturing conspiracy, such as the one Defendant was a part of, poses a significant danger to the community. Defendant's continued use of methamphetamine poses a risk that he will return to manufacturing and trafficking. The need to protect the public

and deter criminal conduct is significant in this case as any use of controlled substances while on release constitutes criminal conduct, fosters drug trafficking, and endangers public safety.

The Court has also considered Defendant's history and characteristics. Previously, Defendant was consistently honest with the USPO regarding his drug use. However, he was dishonest this time when the USPO initially asked him about any drug use, and then again when he admitted substance use but denied methamphetamine use. Defendant's relatively low criminal history is offset by the aggravating nature of his repeated violations of supervised release. Defendant has more violations without revocations than the Court typically sees. The need to provide education, training, and treatment is lessened in this case because Defendant's repeated violations after outpatient and inpatient substance abuse counseling have shown his unwillingness to take advantage of the USPO's resources. No treatment options remain.

The Court reminds Defendant that the Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). Defendant's breach of the Court's trust in this case is aggravating. The Court has repeatedly placed trust in him by approving the USPO's no-action requests and modifying the conditions of his release instead of revoking his release. Defendant has repeatedly breached this trust by continuing to use controlled substances. Both sides recognize that incarceration is necessary to address the need to protect the public, deter criminal activity, and address Defendant's breach of the Court's trust.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence. Here, the Court recommends a sentence of twenty months of incarceration, which is ten months above the Guidelines Range. When departing from the Range, the Court must provide an adequate explanation and "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Johnson*, 640 F.3d at 205 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The Court must state "'the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]'" *Id.* (quoting 18 U.S.C. § 3553(c)(2)).

Here, Defendant has violated the terms of his supervised release on five separate occasions, only one of which resulted in revocation. *See* D.E. 1033; D.E. 1044; D.E. 1069; D.E. 1103; D.E. 1158. He repaid this leniency with deception. Although Defendant has been honest with the USPO in the past, he lied about his use of methamphetamine. He only admitted responsibility in Court after laboratory confirmation. Additionally, his repeated drug use poses a risk of dangerous drug use and criminal conduct and an above-Guidelines sentence of incarceration is necessary to protect the public. For the reasons stated above, particularly the many breaches of the Court's trust, the Court finds an above-Guidelines sentence of twenty months of imprisonment is sufficient, but not greater than necessary, to meet the § 3553(a) factors incorporated into this analysis. *See* 18 U.S.C. § 3583(e).

A court also may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See*

18 U.S.C. § 3583(h).  There is no maximum term of supervised release that may be re-imposed upon revocation.  18 U.S.C. § 3583(h); 21 U.S.C. § 841(b)(1)(B)(viii).

The government recommended no term of supervised release to follow and defense counsel recommended four years of supervised release if the Court imposes a within-Guidelines term of imprisonment or, alternatively, no term of supervised release if the Court departs from the Guidelines Range.

Defendant has consistently been unwilling to take advantage of the USPO's resources and the Court's trust while on supervision.  His repeated violations for drug use demonstrate that he is not a good candidate to benefit fully from resources that may be provided during supervised release, and the Court believes that others can benefit more from an investment of the public's resources.  Accordingly, supervised release is inappropriate following imprisonment.

Based on the foregoing, the Court **RECOMMENDS**:

    1.    That Defendant be found guilty of Violations #1-#4;

    2.    Revocation with a term of imprisonment of twenty months; and

    3.    No supervised release to follow.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record.  Any waiver should comport with the Court's standard waiver form, available from the Clerk.  Absent waiver, the matter will be placed on District Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute.  *See also* 18 U.S.C. § 3401(i).  As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration,

de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).

This the 1st day of May, 2018.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge